IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



MASOUD SHARIF,

    *Plaintiff,*

v.      Civil Action No. 1:14-cv-1294

UNITED AIRLINES, INC.,

    *Defendant.*

## MEMORANDUM OPINION

This matter comes before the Court on Defendant United Airlines, Inc.'s Motion for Summary Judgment. Dkt. No. 67. The motion has been fully briefed by the parties. On June 19, 2015, the Court heard oral argument and took the matter under advisement. For the reasons set forth below, the motion will be granted.

**I.**    **Background[1]**

This case arises out of an employment relationship between Plaintiff Masoud Sharif and Defendant United Airlines, Inc. ("United"). In 1990, Sharif began working for United as a Reservation Representative and remained employed there for the next twenty-four years. In 2004, Sharif was promoted to the position of Service Director. Besides an incident in 2009, United had "consistently issued Sharif positive performance evaluations." Am. Compl. ¶ 34.

Due to being imprisoned and tortured by Iranian police during the Islamic Revolution in 1979, Sharif suffers from anxiety. Around 2009, Sharif requested intermittent Family Medical Leave Act ("FMLA") leave as necessary to manage his anxiety. United approved his request,

---

[1] Because this matter is before the Court on Defendant's Motion for Summary Judgment, the facts are presented in the light most favorable to the plaintiff.

1

allowing him to take leave once a month for one to five days as necessary. To exercise this leave, United required Sharif to call and provide his dates of absence and FMLA case number.

In September 2013, United offered its employees the option to retire early or accept buyout packages. To be eligible for the "Early Out Program," the employee had to have at least ten years with the company and work in certain positions. Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s SJ Mot."), Ex. 20. Sharif declined to participate in the program. Some senior employees did accept the buyout package, and United replaced these employees with employees who were paid significantly less. Of these replacement employees at the Dulles airport where Sharif worked, 48% were under forty years old.

In March 2014, Sharif and his wife took a vacation to South Africa, which was approved by United. He was scheduled to return to work on March 30, 2014. As United employees, the Sharifs took advantage of standby airline tickets for the trip. However, because of an International Jazz Festival going on in Capetown and a strike at one of the major airlines, the Sharifs were unable to obtain standby or full fare tickets back to the United States. Realizing that he would miss his work shift, Sharif suffered an anxiety attack. He then called United to inform them he needed to take FMLA leave and would not report to work on the 30th.

On March 31, 2014, Suzanne Hasser, a Senior Coordinator in United's Dulles office, emailed several United employees, stating that Sharif "called out FMLA yesterday, Sunday. This was the only day he didn't have covered for his vacation trip out of the country. ... He did the same thing last September, 2013." Pl.'s Opp'n, Ex. 10. Seemingly as a result of this email, on April 23, 2014, Sharif was called into a meeting by his Area Manager Jon Connor. United's Human Resources Manager Kenneth Martin and his union representative were also present, with stacks of documents in front of them. During the meeting, Martin questioned Sharif about his

travel plans on March 30, 2014 and whether he had been scheduled to work on that date. This line of questioning caused Sharif to suffer a panic attack. Sharif Dep. 162:18–163:15. As a result, he incorrectly stated that he was not scheduled to work that day. Martin then asked why he called out FMLA leave that day if he was not scheduled to work. Sharif proceeded to explain that he had had a panic attack due to not being able to fly home in time for his shift because of the "unpredicted jazz festival," which made it "impossible to get out of Capetown." Pl.'s Opp'n, Ex. 20. At some point, Martin had Sharif memorialize this explanation in a written statement. *Id.* At the conclusion of the meeting, Sharif was told he was being suspended while United conducted an investigation into his FMLA leave request. His building access card was then taken from him and he was escorted off the premises.

Three weeks later, on May 15, 2014, United sent Sharif a letter notifying him that it was terminating his employment "effective today" because it had concluded that he had violated its honesty policy and "fraudulently claimed an FMLA qualifying illness" to excuse his absence on March 30, 2014. Pl.'s Opp'n, Ex. 12. The letter also informed Sharif he would have a hearing scheduled for June 5, 2014. During that hearing, United told Sharif it would terminate him. It then offered him the option of retiring in lieu of termination. His union representative repeatedly recommended that he retire because the hearing officer's decision would not be favorable. On June 8, 2014, *before* Sharif had made a decision, United's Board Chairman sent him a letter congratulating him on his decision to retire. The next day, "facing no option but termination, Sharif accepted United's offer to retire in lieu of termination." Am. Compl. ¶ 119. He was later replaced by Ms. Terri Evans, who is about 19 months younger than him.

On November 19, 2014, Sharif filed a two count First Amended Complaint in this Court. In Count I, Sharif alleged that he was terminated in retaliation for requesting FMLA leave. In

Count II, he alleged that United treated him in a disparate manner because of his age when it terminated him, in violation of the Age Discrimination in Employment Act ("ADEA"). Sharif has exhausted his administrative remedies, having previously filed a charge with the EEOC and been issued a Dismissal and Notice of Rights. On November 25, 2014, United filed a motion to dismiss the ADEA claim for failure to state a claim, which the Court denied. Dkt. Nos. 18, 25. The parties have since engaged in discovery and United now moves for summary judgment.

## II. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Finally, in making a summary judgment determination, the court must view the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

## III. Discussion

United has moved for summary judgment on both counts of the complaint. The resolution of the motion as to the FMLA claim turns on whether a reasonable juror could find for Sharif on the following issues: (1) whether United took adverse action against him; (2) whether a

causal connection existed between his request of FMLA leave and the adverse action; (3) whether United's non-retaliatory reason for terminating Sharif was pretextual—that is, whether the real reason was retaliation for exercising his FMLA rights; and (4) whether United's May 15, 2014 letter to Sharif stating that it was terminating him because he "fraudulently claimed an FMLA qualifying illness" constitutes direct evidence of discrimination. With respect to the ADEA claim, the motion turns on: (1) whether United took adverse action against Sharif; and (2) whether United's non-retaliatory reason for terminating Sharif was pretextual—in other words, whether the real reason was discriminatory animus based on his age. The Court will address each of these issues in turn.

### A. FMLA Retaliation

To prevail on his FMLA retaliation claim, Sharif must either point to direct evidence of discrimination or proceed under the *McDonnell Douglas* burden-shifting framework. *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the latter method, Sharif must make a prima facie showing that: (1) he engaged in protected activity;[2] (2) United took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). The Court considers first whether Sharif has in fact raised direct evidence of discrimination.

i. *Whether the May 15th Letter Is Direct Evidence of Discrimination*

During oral argument, Sharif's counsel raised for the first time the claim that United's letter to Sharif dated May 15, 2014 constituted direct evidence of discrimination. "Direct evidence encompasses 'conduct or statements' that both (1) 'reflect directly the alleged

---

[2] United does not dispute that Sharif engaged in protected activity when he requested and took FMLA leave on March 30, 2014. The concession is appropriate given that the Fourth Circuit has already made clear that taking FMLA leave is a protected activity. *Yashenko*, 446 F.3d at 551.

5

discriminatory attitude,' and (2) 'bear directly on the contested employment decision.'" *Laing*, 703 F.3d at 717 (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)). Statements that do not suggest the employer's reason for taking adverse action "was due to … FMLA leave *as opposed to some other lawful reason*" are therefore not direct evidence of discrimination. *Laing*, 703 F.3d at 718 (emphasis added) (holding that supervisors' comments, such as "we'll do our best to keep your job open for you," were not direct evidence of FMLA retaliation, especially in light of legitimate reason for suspending her—"namely, her deliberate falsification of delivery records"); *see also, e.g., Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006) (holding that employee's termination for "calling in FMLA for non-FMLA reasons" was not direct evidence of FMLA retaliation because there was no evidence that his employers "admitted to discriminating against him because he used his FMLA for a legitimate purpose"). Such a rule comports with an applicable Department of Labor regulation, which provides that "[a]n employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's job restoration or maintenance of health benefits provisions." 29 C.F.R. § 825.216(d).

In this case, Sharif cites as direct evidence United's May 15th letter to him stating that it was terminating his employment "effective today" because he violated United's honesty policy and "fraudulently claimed an FMLA qualifying illness" to excuse his absence on March 30, 2014. Pl.'s Opp'n, Ex. 12. He contends that this language proves he was terminated on account of his taking FMLA leave. Rather than amounting to a confession to terminating him for exercising his FMLA leave "for a legitimate purpose," the letter explicitly states that United decided to terminate him because he "fraudulently claimed" an FMLA illness when he was not in fact sick. *Compare id. with Stallings*, 447 F.3d at 1051, *and* 29 C.F.R. § 825.216(d). The

6

letter also unambiguously states that he was terminated for another lawful, non-discriminatory reason—having violated United's Working Together Guidelines that require its employees to "be truthful in all communications." Pl.'s Opp'n, Ex. 12; *see Laing*, 703 F.3d at 718. Accordingly, the May 15th letter does not constitute direct evidence of FMLA retaliation and Sharif must proceed under the *McDonnell Douglas* burden-shifting method. United challenges only the latter two prongs of Sharif's prima facie case, and they will be addressed below.

*ii.    Whether a Reasonable Jury Could Find that United Took Adverse Action Against Sharif*

To survive summary judgment, Sharif must produce sufficient evidence showing that his employer took a materially adverse action against him. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding adverse action element in Title VII retaliation cases requires plaintiff to show that "a reasonable employee would have found the challenged action materially adverse"); *Csicsmann v. Sallada*, 211 F. App'x 163, 168 (4th Cir. 2006) (applying the "materially adverse" standard from *White* to analogous FMLA retaliation claims). Adverse actions include, but are not limited to, "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Involuntary resignations and forced retirements similarly amount to adverse actions. *See, e.g., Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995) (finding it "well-established" that an involuntary resignation amounting to a constructive discharge satisfies the adverse action prong in Title VII cases); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988) (holding that coerced resignation amounts to a constructive discharge). In a recent Title VII case, this Court, after discussing the test set forth in *Stone*,[3] held that the plaintiff's resignation was involuntary—thereby satisfying the adverse

---

[3] Although the Court discussed the *Stone* factors at the motion to dismiss stage in this case, they are not dispositive here because there is sufficient evidence for a reasonable jury to find that United terminated Sharif, even if he

7

action element—where "the sole alternative to immediate resignation offered to plaintiff was immediate termination." *Bauer v. Holder*, No. 1:13-cv-93, 2014 WL 2601733, at *6–7 (E.D. Va. June 10, 2014).

Sharif claims that United took a materially adverse action against him when it terminated him. United disputes this characterization, maintaining that it merely "proposed" his termination and that he ultimately voluntarily retired. Def.'s SJ Mot. 14. To support this contention, United cites its collective bargaining agreement ("CBA") with the union, which represents passenger service employees like Sharif. The CBA provides that "[n]o employee will be ... discharged from employment without a prompt, fair and impartial investigative hearing at which he may be represented and assisted by Union Representatives."[4] Def.'s SJ Mot., Ex. 3 (CBA Art. 9.A.5). United asserts that, pursuant to this language, it could not have terminated Sharif until a hearing officer determined that this action was justified. As Sharif is keen to point out, however, United did not always follow its obligations under the CBA. *See* CBA Art. 9.A.3 (providing that United must allow a union representative "a reasonable opportunity to consult with the employee before questioning [pursuant to an investigation that may result in discipline] begins"); Sharif Dep. 161:20–162:3 (stating that the union representative was already in the meeting room when he arrived and had not come to consult him beforehand). Therefore, when viewing the facts in the light most favorable to Sharif, a reasonable juror could find that United's obligations under the CBA did not preclude it from terminating him.

---

ultimately retired in lieu of termination. Importantly, the test is not whether United terminated him, but whether it took "materially adverse action" against him. There is certainly enough evidence for Sharif to meet that standard, as will be discussed in more detail below.

[4] Notably, the provision does not say that an employee will not be discharged unless and *until* he has a hearing. Under the actual language, an employee may be terminated and *then* afforded a hearing in which he could be "brought back." *See* Connor Dep. 79:9–11.

8

Despite United's assertions, there is plenty of evidence supporting Sharif's claim that he was terminated. When discussing United's termination procedures with respect to another employee, Connor testified that he "was terminated and ... *brought back* after he had a review through the hearing process." Connor Dep. 79:9–11 (emphasis added). This testimony contradicts United's claim that it can only terminate an employee *after* a decision is made by the hearing officer. Likewise, the officer assigned to preside over Sharif's hearing, David Merriman, testified that he reviews only whether the company's actions that have been taken are "reasonable," not whether the employee has actually violated company policy. Merriman Dep. 29:4–15.

Furthermore, United has admitted in its answer that during the June 5, 2014 hearing, it told him he would be terminated. Am. Answer ¶ 112; Am. Compl. ¶ 112. It even stopped paying Sharif his salary following the April 23, 2014 meeting in which he was accused of falsely claiming FMLA leave. Pl.'s Opp'n, Exs. 13, 28. Additionally, on May 6, 2014, United's Senior Manager of Human Resources Kenneth Martin wrote to several of Sharif's managers stating that Sharif's separation from the company was "involuntary," that he was "being terminated," and that his "expected termination date" was May 14, 2014. *Id.* at Ex. 22. Then, on May 15, 2014, Sharif's manager Jon Connor presented Sharif with a letter stating that he was terminating his employment "effective today." *Id.* at Ex. 12. The letter instructed Sharif to "[r]eturn all items of Company property to [Connor] immediately." *Id.* On June 8, 2014, United's Chairman sent Sharif a letter congratulating him on his decision to retire *before* he had made his decision on June 9th. *Id.* at Ex. 15; Sharif Dep. 209:1–210:13. United's own records even show that Sharif's retirement was "[i]n lieu of termination." Pl.'s Opp'n, Exs. 17, 18. These facts surely would

permit a reasonable jury to find that Sharif was terminated or forced to retire in lieu of termination.

Of course, conduct "short of ultimate employment decisions can constitute [an] adverse employment action" for purposes of the FMLA. *Burlington*, 548 U.S. at 68. Even accepting United's version of the events, which the Court is not required to do, on April 23, 2014, it stopped paying Sharif his salary, took his building access card, escorted him out of the building, and threatened him with termination. Pl.'s Opp'n, Ex. 28; Connor Dep. 47:1–4. A reasonable juror could certainly find that these actions were materially adverse to Sharif. *See Boone*, 178 F.3d at 255 (holding that a "decrease in pay" constitutes adverse employment action).

    *iii.*   *Whether a Causal Connection Existed Between Sharif's Use of FMLA Leave and His Termination*

Sharif must also prove that a causal connection existed between his use of FMLA leave and his termination. *See Yashenko*, 446 F.3d at 551. United asserts that Sharif has not satisfied this element of the claim because "the undisputed record clearly shows that the basis for United's proposed termination was Plaintiff's dishonesty in violation of United's Working Together Guidelines." Def.'s SJ Mot. 15. The investigation leading to this charge, however, resulted from Sharif's request for FMLA leave. Def.'s Statement of Undisputed Material Facts ¶¶ 28–29, 33. It is evident, then, that a causal connection exists between the two events, and thus the third prong of his prima facie case has been met. United's argument is better suited to the pretext issue, and will be addressed below.

    *iv.*   *Whether a Reasonable Jury Could Find that United's Non-retaliatory Reason for Terminating Sharif Was Pretextual*

Now that the Court has determined that Sharif has established a prima facie case of FMLA retaliation, the burden shifts to United to set forth a legitimate, non-discriminatory reason

10

for his termination. *Pearlman v. Pritzker*, 564 F. App'x 716, 719 (4th Cir. 2014). If it does so, Sharif must then "demonstrate that the proffered reason is a pretext for forbidden retaliation." *Id.* (quoting *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001)). This Court has previously observed that one way "[t]o create a factual issue as to pretext [is to] present sufficient evidence to create an inference that the proffered reason has no basis in fact." *Shortt v. Immigration Reform Law Inst.*, No. 1:11-cv-144, 2011 WL 4738657, at *10 (E.D. Va. Oct. 3, 2011), *aff'd*, 480 F. App'x 209 (4th Cir. 2012); *accord Harris v. Home Sales Co.*, 499 F. App'x 285, 293 (4th Cir. 2012) (affirming summary judgment for employer on issue of pretext because employee had "failed to put forth sufficient evidence showing that [the employer's] explanation for his demotion was false"). Of particular relevance here, when the employer's proffered reason is the employee's misconduct, the employee may prove pretext by producing evidence that "reasonably calls into question the honesty of [the employer's] professed belief ... that he should be discharged" for the alleged misconduct. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997).

Many courts have utilized the "honest belief rule" to evaluate claims of pretext. *E.g.*, *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012); *Medley v. Polk Co.*, 260 F.3d 1202, 1208 (10th Cir. 2001); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680 (7th Cir. 1997); *see also DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citing *Giannopoulos* for proposition that, to show pretext, a plaintiff may not merely demonstrate that her employer's belief about her performance is incorrect, but rather must "present evidence reasonably calling into question the honesty" of that belief); *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001) (holding plaintiff had put forth sufficient evidence of pretext where the record did not support employer's contention that supervisor

11

"honestly believed" that plaintiff had been investigated for sexual harassment). The Sixth Circuit has portrayed the rule as follows:

> In order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made. *The employer's decision-making process need not be optimal, or leave no stone unturned; rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.* If the employee proves the employer failed to do so, the employer's decision-making process is unworthy of credence ... and any reliance placed by the employer in such a process cannot be said to be honestly held.

*Murphy v. Ohio State Univ.*, 549 F. App'x 315, 322 (6th Cir. 2013) (emphasis added) (brackets, citations, and internal quotation marks omitted) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir. 1998)).

Here, United has proffered a legitimate, non-retaliatory reason for Sharif's termination—his violation of its honesty policy due to his "fraudulent statements [regarding] his alleged use of FMLA leave." Def.'s SJ. Mot. 15–16. Sharif counters that United's failure to follow its own procedures sufficiently shows that its belief was not honestly held. In support thereof, he presents the following evidence: (1) United's Human Resources Manager Kenneth Martin "sprang the meeting on Sharif without notifying him in advance what the meeting was about and without giving him an opportunity to speak with his union representative first," Sharif Dep. 161:16–162:3; (2) Martin did not "conduct any further investigation after the April 23, 2014 meeting," Martin Dep. 187:1–9; (3) Martin's questions during the meeting "were misleading and confusing," Pl.'s Opp'n, Ex. 11; and (4) "United's punishment of Sharif is also more severe than if Sharif simply had not reported his absence on March 30, 2014 ... [because] United penalizes a

12

'no-call, no-show' absence only by issuing three 'points' against an employee," Martin Dep. 33:18–34:8; Pl.'s Opp'n, Ex. 29 (United's Discipline Policy) at 862.

The Sixth Circuit's decision in *Murphy* is highly instructive. In that case, the plaintiff attempted to establish pretext by showing that her employer's investigation of her misconduct was flawed. Specifically, she claimed that: "(1) the [collective bargaining agreement] sets the timeframe for investigations and OSU did not follow that timeframe; (2) OSU intentionally waited to begin the investigation in order to prejudice Murphy's ability to obtain exculpatory information; (3) the charges against her were baseless; and (4) OSU failed to act with due diligence in its investigation." *Murphy*, 549 F. App'x at 321–22. She further asserted that her "union representative could have participated in the investigation," and that her supervisor could have contacted her or her physician "to clarify any questions he had regarding Murphy's medical leave documentation." *Id.* at 322. In affirming the district court's grant of summary judgment in favor of the university, the Sixth Circuit stated that "[e]ven if it was not optimal, OSU's investigation identified the pertinent facts and witnesses, and provided Murphy with due process by sharing the information it gathered and holding a hearing at which Murphy was represented by counsel and union representatives." *Id.*

Similarly here, the applicable CBA required United to allow Sharif's union representative "a reasonable opportunity to consult" with him prior to the April 23, 2014 meeting in which Martin questioned him for possible abuse of FMLA leave. *See* CBA Art. 9.A.3. United does not appear to dispute that it failed to comply with this obligation. Such an administrative failure, however, was held not to be dispositive in *Murphy*, and the Court sees no reason why it should be here. Moreover, like in *Murphy*, United permitted Sharif's union representative to be present during the meeting as well as during the investigative review hearing. Thus, even if its

13

investigation was "not optimal," the claimed error does not "undermine the reasonableness of the investigation." *Murphy*, 549 F. App'x at 322.

Sharif's other contentions also fail to provide support for his claim of pretext. Because his dishonesty was obvious to Martin during the meeting, United apparently concluded that there was no need for further investigation.[5] It is important to note here that the Court does not sit in judgment "as a kind of super-personnel department weighing the prudence of employment decisions . . . ." *DeJarnette*, 133 F.3d at 299 (citing *Giannopoulos*, 109 F.3d at 410). Likewise, the wisdom of a policy penalizing an employee who is a "no-show" with three points and an employee who violates its honesty policy with termination "is not our province to decide . . . ." *Giannopoulos*, 109 F.3d at 410–11. The Court is also confident that no reasonable juror would find Martin's questions to be confusing or misleading. *See* Def.'s SJ Mot., Ex. 11 (Martin's interview notes from the April 23, 2014 meeting, listing questions such as such as "were you scheduled to work on March 30, 2014?" and "if you were not scheduled, why did you call out for FMLA?"). Thus, even when viewed in the light most favorable to Sharif, as the Court must, none of the above evidence demonstrates that United's belief in his dishonesty was disingenuous.

To the contrary, United relied on particularized facts that led it to conclude that Sharif had violated its honesty policy. When asked during the April 23rd meeting whether he was scheduled to work on March 30, 2014, Sharif responded that he was not scheduled. Upon being reminded that he had indeed been scheduled to work and in fact claimed FMLA leave that day, Sharif "became perplexed and …could not recall being sick." Def.'s SJ Mot., Ex. 12. "After many minutes passed," Sharif changed his story and told his supervisors that he tried to fly back to the United States on March 29th to arrive in time for his shift, but that due to the International

---

[5] Sharif notably does not highlight any United policy or procedure that Martin violated by failing to look further into the matter.

Jazz Festival going on in Capetown, all the departing flights were full. *Id.* As a result of not being able to make his shift, Sharif claimed that he suffered an anxiety attack, which led him to call out on FMLA leave. Based on his nervous demeanor and inconsistent answers during the meeting, Sharif's supervisors determined that he was not being truthful about becoming ill on the day he took FMLA leave. Martin Dep. Tr. 186:2–190:4; Connor Dep. Tr. 51:12–16. Their suspicions were bolstered by the fact that both Sharif and his wife, who also works for United, "attempted to rearrange their work calendars so that they would have off of work from March 16th through April 4th," which would have the effect of extending their vacation. Def.'s SJ Mot., Ex. 7. Sharif had listed his March 30th shift—the one he missed by calling out on FMLA leave—on United's employee shift-swapping platform, but was unable to find someone to cover. *Id.* at Ex. 8. This apparently was not an isolated incident, as Sharif had called out on FMLA leave on the one day he was scheduled to work while on vacation back in September 2013. Pl.'s Opp'n, Ex. 10.

Even if United's investigation was not optimal, no reasonable fact-finder could conclude on this record that Sharif's supervisors' suspicions were not honestly held. Thus, pursuant to the authority of *DeJarnette* and the long line of cases applying the honest belief rule, Sharif has failed to carry his burden to show pretext and his FMLA claim will be dismissed.

### B. Discrimination Under the ADEA

The Fourth Circuit has instructed that a plaintiff may prove an ADEA claim in two ways: (1) through the presentation of direct evidence or "sufficiently probative" indirect evidence; or (2) through the *McDonnell Douglas* burden-shifting framework. *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citations omitted). Under the *McDonnell Douglas* framework, a plaintiff sets forth a prima facie case of intentional discrimination by showing that: (1) he is a

member of a protected class; (2) he suffered a materially adverse action; (3) at the time of the adverse action, he was performing at a satisfactory level; and (4) the adverse action was because of his age. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013); *Burlington N.*, 548 U.S. at 68; *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). "Once the plaintiff has met this initial burden, the burden of production shifts to the employer 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *O'Connor*, 517 U.S. at 311 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer does so, the burden shifts back to the plaintiff to demonstrate "that the defendant's proffered reason was a pretext for discrimination." *Burns*, 96 F.3d at 731 (citation and internal quotation marks omitted).

United argues that Sharif has not put forth sufficient evidence to show that: (1) he suffered from an adverse employment action; (2) the adverse action was because of his age; or (3) United's non-retaliatory reason for terminating Sharif was pretextual—in other words, that the real reason was discriminatory animus based on his age. Because the adverse action prong has already been addressed with respect to the FMLA claim,[6] the Court will only address the latter two arguments.

    i.    *Whether a Reasonable Juror Could Find that Sharif Was Terminated Because of His Age*

United asserts that Sharif has failed to put forth facts sufficient to create an inference that the adverse action was based on his age. Sharif may satisfy this element by showing that he was replaced by someone outside of his protected class or by someone "substantially younger." *O'Connor*, 517 U.S. at 312–13 ("The fact that one person in the protected class has lost out to

---

[6] Although the "materially adverse" standard emerged in *Burlington Northern*, a Title VII case, the Fourth Circuit has applied it to ADEA claims. *See Harman v. Unisys*, 356 F. App'x 638, 641 (4th Cir. 2009).

another person in the protected class is ... irrelevant, so long as he has lost out because of his age."). Neither the Supreme Court nor the Fourth Circuit have directly stated a numerical point at which a replacement employee is "substantially younger," although the Fourth Circuit has affirmed a jury verdict on an ADEA claim where the age gap was eight years. *See Pilger v. D.M. Bowman, Inc.*, 833 F. Supp. 2d 489, 497 (D. Md. 2011), *aff'd*, 521 F. App'x 307 (4th Cir. 2013).

In this case, Sharif initially alleged that he was replaced by Ms. Terri Evans, who is approximately ten years younger than him. Am. Compl. ¶ 120. To refute this allegation, United submitted a declaration from one of its human resources managers in which he affirmed that she is in fact fifty-nine years old—only one year younger than Sharif. The Court ruled that it was inappropriate to consider the affidavit at the motion to dismiss stage and allowed the case to proceed to discovery. Now that discovery has been completed, Sharif has not put forth any evidence to dispute United's contention that Evans is only about 19 months younger than him. *See* Def.'s SJ Mot., Ex. 19. Therefore, the age of his replacement cannot satisfy his burden on the fourth prong of his prima facie case.

Sharif may alternatively satisfy this element by showing that he was treated differently than similarly situated employees outside his protected class. To rely on comparator evidence, a plaintiff must prove that the comparator employees were "similar in all relevant respects," including having the same supervisor, being subjected to the same standards, and engaging in the same conduct without differentiating or mitigating circumstances. *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

In the complaint, Sharif alleged that another employee, Ms. LaTonya Love Franks, was approximately ten years younger than him, missed a day of work while she was on vacation, and requested to use FMLA leave to excuse her absence—yet United continues to employ her. Am. Compl. ¶¶ 121–24. United contends that Sharif has failed to show that he and Love Franks were similarly situated. Specifically, it avers that there are differentiating circumstances because, after the hearing officer upheld her termination, Love Franks chose to go through the union grievance process and was eventually reinstated via a settlement between United and the union. Martin Dep. 123:1–124:19, 128:14–129:16. By contrast, Sharif chose not to wait for the hearing officer's decision and decided to retire beforehand. *See* Def.'s SJ Mot., Ex. 18. Significantly, the record reveals that United actually treated Sharif and Love Franks *exactly* the same because it "proposed" both of their terminations for the same allegedly fraudulent conduct with respect to FMLA leave. Martin Dep. 126:19–128:10. As a result, Sharif cannot rely on his proffered comparator evidence because no reasonable juror could conclude from it that he was treated differently because of his age.

Sharif may yet satisfy the fourth prong of his prima facie case by otherwise showing that he "lost out because of his age." *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir. 2000) (quoting *O'Connor*, 517 U.S. at 312). Sharif points to United's Early Out Program as "evidence of animus towards older workers." Pl.'s Opp'n 25. He claims that the program "targets older workers through a variety of incentives and benefits based on retirement eligibility." *Id.* The undisputed evidence shows, however, that the program was *not* tied to retirement eligibility,[7] nor was there a minimum age to participate in it. *See* Def.'s SJ Mot., Ex.

---

[7] During oral argument, Plaintiff's counsel asserted that the Early Out Program contained age ranges within which United workers would be eligible for the Program. Upon close review, however, these age ranges merely reflect eligibility for "the current retiree travel policy." Def.'s SJ Mot., Ex. 20 at Section 6.c. The document further states

6. Rather, the option was available to employees who had at least 10 years of service (as of July 22, 2013) and worked in certain positions. *Id.* Absent other evidence, the fact that younger workers appear to *benefit less* from accepting the buyout[8] does not support Sharif's claim that the program constituted evidence of animus towards older workers.

In sum, no reasonable juror could find that Sharif was terminated because of his age based on the record currently before the Court. He has thus failed to meet his burden to set out a prima facie case of age discrimination. Accordingly, his ADEA claim must be dismissed as well.

### v. *Whether a Reasonable Jury Could Find that United's Non-retaliatory Reason for Terminating Sharif Was Pretextual*

Even assuming, *arguendo*, that Sharif had established a prima facie case of age discrimination, his ADEA claim would nonetheless fail because he is unable to show that United's legitimate, non-discriminatory reason for his termination—his violation of its honesty policy—was in fact pretext for discrimination. "To make this demonstration, the employee must show that as between the plaintiff's age and the defendant's explanation, age was the more likely reason for the dismissal, or that the employer's proffered explanation is simply unworthy of credence." *Burns*, 96 F.3d at 731 (citation and internal quotation marks omitted).

As above with the FMLA claim, there is no evidence showing that United's belief that Sharif had lied during the April 23rd meeting was anything less than genuine. Moreover, for the same reason that he cannot satisfy the fourth prong of his prima facie case, there is no evidence on the record to support his contention that he was terminated based on his age. Accordingly,

---

that Early Out participants who are eligible to receive retiree passes will receive the passes under that separate policy. *Id.*

[8] This is so because younger workers likely do not have the age and years of service required to be "retirement eligible" and thus entitled to lifetime travel passes. Martin Dep. 75:11-76:14. Therefore, by accepting the buyout, younger workers forego the travel benefits they would have received had they been retirement eligible. *Id.*

19

because he cannot establish pretext, summary judgment will be granted to United on this basis as well.

## IV. Conclusion

For the foregoing reasons, summary judgment will be granted in favor of United on both claims.

An appropriate Order shall issue.

July 1, 2015

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge